UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

TIMOTHY BITLER, SR.,                          :
                Plaintiff,                     :
                                              :
      v.                                      :   No.   5:24-cv-2177
                                              :
ROBESON TOWNSHIP,                             :
                Defendant.                     :
_____

**O P I N I O N**
**Plaintiff's Motion for a Preliminary Injunction, ECF No. 7 – Granted**

**Joseph F. Leeson, Jr.**                                                       **July 25, 2024**
**United States District Judge**

    **I.**        **INTRODUCTION**

This case is about a Resolution adopted by vote of the Robeson Township Board of Supervisors, which, *inter alia*, restricts the audio recording of Board gatherings before, after, and during recesses of public meetings. Plaintiff Timothy Bitler, Sr., an elected supervisor of Robeson Township, regularly records these meetings and uploads the recordings on YouTube for public viewing. Bitler brings this action, and requests preliminary injunctive relief, claiming that this Resolution suppresses speech and violates his First Amendment rights. Defendant Robeson Township argues, among other things, that Bitler's actions are not protected by the First Amendment and the Resolution is a reasonable time, place, manner restriction of speech. For the reasons discussed below, the Court will grant Bitler's motion and issue a preliminary injunction.

II.     **FINDINGS OF FACT**[1]

Plaintiff Timothy Bitler, Sr., is a citizen and elected supervisor of Robeson Township of Berks County, Pennsylvania.  *See* Compl., ECF No. 1, ¶¶ 1-2.  Every month at a building owned by the Township, the Township Board of Supervisors holds public meetings to consider official business and enact ordinances, resolutions, and policies pertaining to the Township.  *See id*. ¶¶ 3, 10.  Any member of the public may attend these meetings, offer public comment, or record the meetings.  *See id*. ¶ 10.  Using a camera and tripod, Bitler records an audiovisual stream before, during, and after every Board meeting, *see id*. ¶ 12, and he has done so continuously since the Board stopped using Zoom to stream meetings in or around June of 2023.  *See* Pl. Ex. A.  Bitler livestreams and uploads these recordings for public viewing on YouTube, meaning that the recordings are available for anyone to watch live during the meetings and can continue to be viewed on YouTube anytime thereafter.  *See id*.  Other than Bitler's recordings, the only official record of the meetings is the Board's meeting minutes.  *See* Compl. ¶ 11.

Bitler's recordings document when the official meeting is in progress, as well as record the public meeting room before, after, and during recesses of the meetings.  At all times while operating, the camera remains stationary in the public meeting room and visible to those in attendance.[2]  Before every meeting, Bitler conspicuously posts a notice in the public meeting

---

[1]     The findings of fact are based on factual allegations in the Complaint, the briefs related to the motion at issue, and the exhibits and testimony given during the preliminary injunction hearing held on July 15, 2024.  At the preliminary injunction hearing, counsel for both parties presented argument and had the opportunity to call witnesses.  Plaintiff Timothy Bitler, Sr. testified. Richard Fix and Robert Caldwell, residents of Robeson Township, also testified on behalf of Plaintiff. The Township did not call any witnesses.

[2]     It is undisputed that Bitler is not attempting to conceal his camera or record the Board's private conferences or executive sessions as defined under the Sunshine Act.  Nor is Bitler attempting to record or follow any individuals with his camera into any private places.

room that the meeting is being recorded and streamed to YouTube. *See* Pl. Ex. C. He also announces to everyone in the room that recording is occurring. When the Board recesses the public meetings to hold executive sessions under the Sunshine Act, 65 Pa.C.S. § 708(b), the Board exits the public meeting room and Bitler continues to record the room. *See id*. ¶ 12. Although the recording is not documenting the executive session, it picks up on interactions that take place in the public meeting room, such as unofficial public comments and discussion among meeting attendees, most of whom are Township residents, as well as comments audible in the public meeting room made by elected officials on the way to and from the executive session. *See id*. Sometimes these recorded conversations are related to Township issues, and sometimes they are merely personal in nature.

On March 19, 2024, the Board adopted Resolution No. 24-06 (the "Resolution") by majority vote, which restricts the recording of Board gatherings before, after, and during the recesses of public meetings, as well as during conferences and executive sessions. *See* Pl. Ex. B, Res. No. 24-06 §§ (1)(B), (I). Specifically, the Resolution prohibits the recording of any activities in the public meeting room that take place before or after the commencement of a public meeting, during a recess of a public meeting, or during a conference or executive session of the Board of Supervisors under the Sunshine Act. *Id*. § (1)(B). Pursuant to these restrictions, a recording device cannot be operated "more than one minute prior to a meeting being called to order, while a meeting is in recess, or more than one minute after a meeting is adjourned." *Id*. § (1)(I). Anyone in violation of these rules is "subject to removal from the meeting" and "shall not be permitted to continue recording the meeting in which the violation took place." *Id*. § (1)(J). Bitler has been instructed on more than one occasion to turn off the audio of his camera due to violation of the Resolution.

### III. LEGAL STANDARD

**Preliminary Injunctions in First Amendment Cases – Review of Applicable Law**

Plaintiffs seeking a preliminary injunction ordinarily "must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004); *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994). "However, in First Amendment cases where 'the government bears the burden of proof on the ultimate question of a statute's constitutionality, plaintiffs must be deemed likely to prevail for the purpose of considering a preliminary injunction unless the government has shown that plaintiffs' proposed less restrictive alternatives are less effective than the statute.'" *Reilly v. City of Harrisburg*, 858 F.3d 173, 180 (3d Cir. 2017) (quoting *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004)) (cleaned up). In other words, in First Amendment cases, the burden shifts to the government to reflect that at trial, the burden always rests with the government. *See id*. Therefore, a plaintiff's burden when seeking preliminary injunctive relief in a First Amendment case is limited to showing (1) "the law restricts protected speech," and (2) the restriction will likely cause "irreparable harm." *See id*. at 180 n.5. Once the plaintiff has met this burden, the burden shifts to the government to "justify its restriction on speech under whatever level of scrutiny is appropriate[,]" either intermediate or strict scrutiny. *See id*.

### IV. CONCLUSIONS OF LAW

Bitler brought the instant motion seeking a preliminary injunction to suspend the enforcement of the Resolution at issue while these proceedings are ongoing. Bitler argues that the Resolution infringes on his First Amendment rights and causes irreparable injury. The

Township argues that Bitler has failed to show his actions fall within the purview of the First Amendment, or alternatively, that the Resolution is a reasonable time, place, and manner restriction of speech.  As further discussed below, the Court finds that Bitler has met his burden to show that First Amendment standards apply in this case, and, at this juncture the Township has failed to show that the Resolution is narrowly tailored to serve a significant government interest.  Therefore, the Court grants Bitler's request for preliminary injunctive relief.

Bitler has met his burden to show that the Resolution restricts protected speech. "The First Amendment protects actual photos, videos, and recordings, and for this protection to have meaning the Amendment must also protect the act of creating that material." *Fields v. City of Philadelphia*, 862 F.3d 353, 358 (3d Cir. 2017) (citing *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 790 (2011)) (explaining, in the context of recording police activity, that "[t]here is no practical difference between allowing police to prevent people from taking recordings and actually banning the possession or distribution of them"). *See also ACLU v. Alvarez*, 679 F.3d 583, 596 (7th Cir. 2012) ("Restricting the use of an audio or audiovisual recording device suppresses speech just as effectively as restricting the dissemination of the resulting recording."). As explained by the Third Circuit in *Fields v. City of Philadelphia*, "[t]o record what there is the right for the eye to see or the ear to hear corroborates or lays aside subjective impressions for objective facts." *See id*. at 359.  Additionally, although the First Amendment "does not carry with it the unrestrained right to gather information[,]" it does promote news gathering and the right of access to information generally. *See PG Publ. Co. v. Aichele*, 705 F.3d 91, 98-99 (3d Cir. 2013) (internal marks and citations omitted).[3]  Here, Bitler's recordings take place in a

---

[3]     The First Amendment standards and related case law that will aide in the ultimate disposition of this case—whether based on content-neutral restrictions, public right of access,

public building and the subject of the recordings are public meetings, open for anyone to attend. Recording the events of these meetings is therefore akin to news gathering or creation of a public record for dissemination, certainly implicating the First Amendment, and restriction of this recording is a form of speech suppression.

Additionally, Bitler has shown that the Resolution will likely cause irreparable harm. Residents of the Township rely on Bitler's recordings to generally stay apprised of public issues and to witness the Board meetings on days when they cannot physically attend.  As testified to by two Township residents and Bitler himself, conversations that take place in the meeting room before, after, and during recesses to public meetings are sometimes of public importance and pertain to Township issues. Some of those conversations take place between public officials, or public officials and residents.  The Township residents and Bitler have expressed concern about interactions that take place in the meeting room during the restricted times, such as alleged rude comments from Township Supervisors or "official business" between Township Supervisors taking place outside of the meetings.  For all of those reasons, Bitler has shown a likelihood of irreparable harm.

The burden thus shifts to the Township to justify its speech restriction under the appropriate level of constitutional scrutiny, either strict or intermediate. Certain restrictions are "presumptively unconstitutional and subject to strict scrutiny[,]" such as "[c]ontent-based laws" and "prior restraints" of speech, whereas intermediate scrutiny is applied to "content-neutral restrictions[.]" *See In re Subpoena 2018R00776*, 947 F.3d 148, 155 (3d Cir. 2020).  The parties disagree on which level of scrutiny the Court should apply to the speech restriction in this case.

---

prior restraints, or otherwise—remain in flux at this early stage of the proceedings and will be decided at a later date by this Court after full fact discovery has taken place.

However, even if the Court assumes at this juncture that the Township carries the less stringent burden under intermediate scrutiny of proving that the Resolution is "narrowly tailored to serve a significant governmental interest[,]" *see Bruni v. City of Pittsburgh*, 941 F.3d 73, 84 (3d Cir. 2019), the Court finds that the Township has failed to meet this burden for the following reasons.

First, the Township argues, without citation, that "[t]here is no First Amendment right to audio visually record people while no public meeting is taking place[,]" and attempts to shift the burden to Bitler to prove that "such a right exists." *See* Resp. at 7. However, as already discussed above, case law supports that audiovisual recordings and their creation fall under First Amendment purview, and therefore government restriction of audiovisual recording can constitute suppression of speech. Additionally, although the Township stresses that the public meetings are not in session during the restricted times, the Township does not address the significance of the fact that the recordings are taking place in a public place with the members of the public present. Residents of the Township have the right to observe how their elected Township Supervisors conduct themselves in public places. While this right is not boundless, the Township has failed at this juncture to prove that the Resolution is a reasonable time, place, and manner restriction of speech. *See Kelly v. Borough of Carlisle*, 622 F.3d 248, 262 (3d Cir. 2010) (explaining that "the right to record matters of public concern is not absolute; it is subject to reasonable time, place, and manner restrictions"). In this *public* place at these *public* meetings, with members of the public present, the Township Supervisors are elected "public officials carrying out public functions," and allowing public observation, through audiovisual means or otherwise, "promote[s] the access that fosters free discussion of governmental actions[.]" *See Fields*, 862 F.3d at 362. Although the Township points out that, in lieu of the audiovisual recording, note taking is permitted at the meetings, leaving open this alternative

channel does not meet the Township's burden at this stage to show that the Resolution is narrowly tailored to meet a significant government interest.[4]

Second, the Township argues, also without support, that "nonpublic officials" "absolutely" have a "reasonable expectation of privacy . . . during times when a meeting isn't taking place." *See* Resp. at 7.  The Court is unpersuaded.  The individuals attending these public meetings are not only on notice that the meeting room is being recorded but, based on the sheer fact of their attendance, are generally aware that the meetings take place in a public forum and are open to other members of the public.  Moreover, at the hearing on this Motion, the Township cross-examined Township residents about the types of personal conversations taking place during the restricted times.  Examples of these conversations included weekend plans and Phillies games.  At no point has the Township shown that private, sensitive information has been divulged by Bitler's recordings, nor has the Township explained why it has a "significant government interest" in protecting the personal conversations taking place.  Therefore, the Township has failed to meet its burden at this juncture to show that protection of individuals' privacy in a public place is a significant government interest justifying the Resolution's restrictions.

V.   **CONCLUSION**

For all of the reasons considered above, Bitler's Motion for Preliminary Injunction is granted, and the Township is enjoined from enforcing the challenged sections of the Resolution pending final resolution of this matter.

---

[4]   In fact, the Township's admission at oral argument that any person could attend the meetings, or take and distribute detailed notes of any conversations that take place during the restricted times, actually belies its argument that restriction of the audiovisual recording is narrowly tailored to protect the privacy of "non-public officials."

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge
